UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA MARSHALL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FANEUIL, INC., a Delaware corporation; ALJ REGIONAL HOLDINGS, INC., a Delaware corporation; and Does 1-10 inclusive.<br><br>Defendants. | No. 2:17-cv-01975-KJM-CKD<br><br>ORDER |

Donna Marshall brings this putative class action against a customer service facilitation company for several alleged labor code violations. Defendants Faneuil and ALJ Regional Holdings removed the case to this court. Notice of Removal ("NOR") ¶ 1, ECF No. 1. Plaintiff moves to remand to Sacramento County Superior Court. Mot., ECF No. 6. Defendants oppose the motion, and plaintiff has replied. Opp'n, ECF No. 8; Reply, ECF No. 9. As explained below, the court GRANTS plaintiff's motion to remand.

/////
/////
/////
/////

1

I.  BACKGROUND

Plaintiff filed this putative class action in Sacramento County Superior Court on July 31, 2017, making the following claims: (1) failure to pay overtime wages, California Labor Code §§ 510 and 1198; (2) failure to pay minimum wages, *id.* §§ 1182.12, 1194, 1197, 1197.1, 1198; (3) meal period violations, *id.* §§ 226.7, 512(a), 1198; (4) rest break violations, *id.* §§ 226.7, 1198; (5) wage statement penalties and failure to keep payroll records, *id.* §§ 226(a), 1174(d), 1198; (6) failure to produce employment records, *id.* §§ 226, 432, 1198.5; (7) failure to timely pay wages upon termination, *id.* §§ 201, 202; (8) failure to reimburse business expenses, *id.* § 2802; and (9) unfair business practices, Cal. Bus. & Prof. Code § 17200. Mot. 2.

Defendants removed the case to federal court, asserting jurisdiction under basic diversity jurisdiction, 28 U.S.C. § 1332(a), and the Class Action Fairness Act, 12 U.S.C. § 1453 ("CAFA"). NOR ¶¶ 1–2.

To support their contention that the amount in controversy exceeds the requisite $75,000 for diversity jurisdiction, defendants point to the complaint, noting "[p]laintiff alleges she earned approximately $16 an hour, that she worked 8–10 hours a day, five days a week . . . from approximately November 2014 to December 2016." *Id.* ¶ 13. Defendants rely on these numbers to calculate a total amount in controversy of $85,000. *Id.* ¶ 19.

To support their contention that the amount in controversy exceeds the requisite $5 million under CAFA, defendants submit the declaration of Faneuil's Vice President of Human Resources, Elizabeth Veliz. Veliz Decl., ECF No. 1-2. In her declaration, Veliz states "Faneuil has employed more than 2,500 non-exempt, hourly-paid employees in California, of whom over 1,500 have been terminated on or after October 2014," and "the average hourly rate of this group of employees during this period . . . was roughly $12.25 per hour." *Id.* ¶ 3. Defendants draw on these numbers to calculate a total amount in controversy of $8,856,375. NOR ¶ 47.

Plaintiff moves to remand, challenging defendants' calculations. Mot. 4.

////
////
////

2

II.  LEGAL STANDARD

   A.  Amount in Controversy Generally; Diversity

A defendant may remove to a federal district court "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A federal district court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—citizens of different States . . . ." 28 U.S.C. § 1332(a). Additionally, CAFA gives federal courts original jurisdiction over certain class actions only if (1) the class has more than 100 members, (2) any member of the class is diverse from the defendant, and (3) the amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2), (5)(B).

A defendant's burden of proof as to the amount in controversy for removal purposes initially is lenient. "A defendant seeking to remove a case from state to federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens,* 135 S. Ct. 547, 549 (2014) (quoting 28 U.S.C. § 1446(a)). But the notice of removal "need not contain evidentiary submissions": A defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" can suffice. *Id*. at 551, 554. But when "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 554. The parties may submit evidence outside the complaint including affidavits or declarations or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997) (citation omitted). When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and the underlying assumptions must be reasonable, and not constitute mere speculation and conjecture. *Ibarra v. Manheim Inv., Inc*., 775 F.3d 1193, 1197–99 (9th Cir. 2015).

/////

3

B. CAFA

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra,* 775 F.3d at 1197. Although as a general rule courts "strictly construe the removal statute against removal jurisdiction" and apply a "strong presumption against removal," *Gaus v. Miles, Inc.*, 980 F.3d 564, 566 (9th Cir. 1992), "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee*, 135 S. Ct. at 554 (citing S. Rep. No. 109-14, p. 43 (2005) ("[CAFA's] provisions should be read broadly with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.")). Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court. 28 U.S.C. § 1447(c).

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra,* 775 F.3d at 1198. Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 135 S. Ct. at 554 (citation omitted). If "the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

III. DISCUSSION

To determine the amount in controversy, the court looks first to the complaint. *Ibarra*, 775 F.3d at 1197. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (footnote omitted). Here, plaintiff has brought a class action and alleged that the amount in controversy is less than $75,000.00. Compl. ¶ 1. As noted, defendants rely on the complaint and the declaration of its Human Resources Vice President, Elizabeth Veliz, to argue the aggregate amount in controversy is an estimated $85,000 for diversity jurisdiction and $8,856,375 for CAFA. NOR ¶¶ 19, 47.

////

////

In her motion to remand, plaintiff does not provide rebuttal evidence. Instead, she challenges defendants' calculations and argues defendants do not meet their burden because they make assumptions unsupported by evidence. Mot. 2–16. The amounts in controversy reflect inclusion of a sum of three categories of penalties, discussed below: first with respect to diversity and second with respect to CAFA.

### A. Basic Diversity Jurisdiction

#### 1. Waiting Time Penalties

In their calculation of waiting time penalties, defendants assume plaintiff would be entitled to the maximum statutory penalty of $3,840.[1] NOR ¶ 16 (using the statutory maximum amount of 30 days under Cal. Labor Code § 203 in its calculation). However, the complaint merely alleges defendant failed to pay plaintiff her wages earned and unpaid within seventy-two hours of leaving as required by § 203; it does not specify, and defendant has not provided evidence to prove, that the wages were never paid or were paid at least 30 days late. S*ee Ruby v. State Farm Gen. Ins. Co.*, No. C 10-02252 SI, 2010 WL 3069333, at *3 (N.D. Cal. Aug. 4, 2010) (rejecting defendant's assertion that employees would be entitled to 30 day maximum penalties when complaint made similar allegation and defendants similarly did not provide evidence to support their assumption). Because defendants have not supported this calculation by a preponderance of the evidence but point merely to the complaint's allegations, the court rejects defendants' assumption. *Cf. Garibay,* 539 F. App'x at 764 (rejecting defendants' assumption that each employee was entitled to maximum statutory penalty where assumption not supported by any evidence). Thus, this court does not consider defendants' estimate of waiting time penalties, $3,840, as part of the amount in controversy.

#### 2. Itemized Wage Statement Penalties

To calculate the penalties for non-compliant wage statements, defendants again assume a 100 percent violation rate, calculating a total amount in controversy for this claim of $4,000, the maximum penalty allowed under California Labor Code § 226(e). NOR ¶ 16.

---

[1] $16/hour X 8 hours/day X 30 days = $3,840.

Similar to the calculation for wait time penalties, however, this calculation is based on an assumption that plaintiff will recover the statutory maximum penalty for each pay period, which is not supported by the evidence defendant presents. *See Garibay*, 539 F. App'x at 764 (finding assumption of maximum statutory penalty was not supported by evidence and could not be used to calculate amount in controversy); *see also Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-0474, 2014 WL 584393, at *5 (E.D. Cal. Feb. 12, 2014) (relying on precedent rejecting "unsupported use of 100% maximum violation rates"). Defendants have provided insufficient evidence to meet their burden for the itemized wage statement penalties to be included in determining the amount in controversy.

### 3. Meal and Rest Break Violations

Plaintiff alleges defendants violated the California Labor Code's meal and rest period standards. Defendants calculate an amount in controversy for combined meal and rest period violations as $16,000. NOR ¶ 15. To reach this number defendants multiplied $16 (plaintiff's alleged hourly rate) by 2 (missed meal/rest periods per workday) by 500 (number of days worked by plaintiff during period at issue).[2]

Defendants assume plaintiff missed one meal break and one rest break every single day she worked but have not provided any evidence to prove this assumption is reasonable. *See* NOR ¶ 15; Mot. 17–18. Therefore, defendants here as well have not met their burden to establish meal and rest break violations as a component of the amount in controversy. *See Ibarra*, 775 F.3d at 1199 ("Because the complaint does not allege that [defendant] universally, on each and every shift, violates labor laws by not giving rest and meal breaks, [defendant] bears the burden to show that its estimated amount in controversy relied on reasonable assumptions.").

### 4. Conclusion

Without the amounts reviewed above—$2,250 for waiting time penalties, $4,000 for itemized wage statement penalties, and $16,000 for meal and rest break violations— defendants' estimates of the amounts in controversy for the remaining claims, $62,750 in the

---

[2] $16 X 2 X 500 = $16,000.00

6

aggregate, do not exceed $75,000 as required by 28 U.S.C. § 1332(a). The court need not address them individually. Diversity jurisdiction is not established.

B. CAFA Jurisdiction

1. Waiting Time Penalties

In its calculation of waiting time penalties under CAFA, defendants also assume each employee would be entitled to the maximum statutory penalty. NOR ¶¶ 32–34. However, because defendants have not supported this calculation by a preponderance of the evidence, the court rejects defendants' assumption. *See Garibay,* 539 F. App'x at 764 (rejecting defendants' assumption that each employee was entitled to maximum statutory penalty because the assumption was not supported by any evidence); *see also Carag v. Barnes & Noble, Inc.*, No. 2:15-CV-00115, 2015 WL 3706497, at *3, 5 (E.D. Cal. June 11, 2015) (following Ninth Circuit and rejecting defendants' "assumption of a maximum statutory penalty" for waiting time claim). The court does not consider defendants' estimate of waiting time penalties, $4,410,000, as part of the amount in controversy for CAFA purposes.

2. Itemized Wage Statement Penalties

To calculate the penalties for non-compliant wage statements, defendants again assume a 100 percent violation rate. NOR ¶¶ 16, 35–38. Defendants represent they "issued more than 14,800 wage statements to approximately 1,480 nonexempt, hourly employees employed in California." *Id.* ¶ 38. They then multiply 1,480 by $50, which is the penalty for violations within the initial pay period, and add that sum to $13,320^3$ multiplied by $100, which is the penalty for subsequent wage statement violations. *Id.* Thus, defendants calculate a total amount in controversy for this claim to be $1,406,000$^4$, which is the maximum penalty possible under California Labor Code 226(e).

Similar to the calculation for wait time penalties, however, the assumption that each class member will recover the maximum penalty for each pay period is not supported by

---

[3] 14,800 wage statements – 1,480 employees = 13,320 subsequent wage statements.

[4] (1,480 X $50) + (13,320 X $100) = $1,406,00.00

7

solid evidence. *See Garibay*, 539 F. App'x at 764 (finding similar calculation assuming "every single member of the class would be entitled to recover penalties for every single pay period" was not supported by evidence and could not be used to calculate amount in controversy). Defendants have provided insufficient evidence to meet their heightened burden for the itemized wage statement penalties.

### 3. Meal and Rest Break Violations

For plaintiff's CAFA claim based on violation of the California Labor Code's meal and rest period standards, defendants calculate an amount in controversy for meal period violations of $362,600 and for rest period violations also of $362,600. NOR ¶ 43. To reach this number, defendants use a calculation similar to that they used for the overtime violations. *Id.* For each claim, defendants multiply $12.25 (the average hourly rate for putative class members) by 1 (missed meal/rest period per workweek) by 29,600 (number of weeks worked by putative class during the period at issue).[5] Thus, for meal and rest period violations combined, defendants calculate a total amount in controversy of $725,200.[6]

These calculations, with the accompanying explanation and declarations, sufficed under the low burden of proof in effect at the time of removal. *See Dart Cherokee*, 135 S. Ct. at 551, 554 (holding defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" was sufficient and notice of removal "need not contain evidentiary submissions"). Defendants then needed to provide only a "short and plain" statement, and they did that. *Id.* at 553 ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

Here as well, however, viewed in light of the higher burden imposed by plaintiff's challenge, Veliz's declaration is "speculative and self-serving" because it "sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages." *Garibay*, 539 F. App'x at 764; *see also Farley v.*

---

[5] $12.25 X 29,600 X 1 = $362,600.00

[6] $362,600.00 + $362,600.00 = $725,200.00

8

*Dolgen California LLC*, NO. 2:16-CV-02501-KJM, 2017 WL 3406096, at *3 (finding similar declarations to be "speculative and self-serving"); *Page v. Luxottica Retail N. Am., Inc.,* No. 2:13-CV-01333-MCE, 2015 WL 966201, at *4 (E.D. Cal. Mar. 4, 2015) ("Courts have been skeptical of high CAFA estimates that rely solely on declarations with non-specific human resource data."). The two additional declarations signed by Sheila Cotton and Joseph Roark and provided by defendants in their opposition, ECF No. 8-2; ECF No. 8-3, are similarly generalized, reiterating the same sorts of information set forth in Veliz's declaration and in some cases drawing broad conclusions based on information and belief; therefore, this court does not consider defendants' calculation, which relies on the Veliz, Cotton, and Roark declarations, as part of the amount in controversy.

### 4. Attorney's Fees

For CAFA purposes, defendants also combine the award estimates to form the baseline for their attorney's fees calculation. Applying the Ninth Circuit's twenty-five percent benchmark for reasonable attorney's fees in class action cases, defendants estimate $1,771,275 as the amount of plaintiff's attorney's fees.[7] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("The circuit has established 25% of the common fund as a benchmark award for attorney fees."). But because there is insufficient evidence to establish defendants' award estimates upon which any attorney's fees would be based, there is also insufficient evidence to establish defendants' $1,771,275 attorneys' fees estimate for purposes of assessing the amount in controversy.

### 5. Conclusion

Without these amounts—$4,410,000 for waiting time penalties, $1,406,000 for itemized wage statement penalties, $725,200 for meal and rest break violations, and $1,771,275.00 for attorneys' fees—defendants' estimates of the amount in controversy for the remaining claims, $543,900, does not come close to the $5 million required for CAFA jurisdiction to adhere, so the court need not address those other amounts separately. *Abrego*

---

[7] $7,085,100.00 X .25 = $1,771,275.00

9

*Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 678 (9th Cir. 2006) ("Prominent among the requirements in these specified [CAFA] paragraphs [is] that the aggregate amount in controversy must exceed $5,000,000.").

IV. <u>CONCLUSION</u>

    Defendants have failed to meet their burden to establish federal jurisdiction based either on diversity or CAFA. The court therefore GRANTS plaintiff's motion to REMAND to Sacramento County Superior Court.

    This case is CLOSED.

    IT IS SO ORDERED.

DATED: August 6, 2018.

                                                UNITED STATES DISTRICT JUDGE